**2522-CC00952**

Electronically Filed - CITY OF ST LOUIS - May 19, 2025 - 04:21 PM

## MISSOURI CIRCUIT COURT
## 22ND JUDICIAL CIRCUIT COURT
## ST. LOUIS CITY

| | |
|---|---|
| **COLLEEN STUART**, on behalf of herself and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>**AMERICAN MULTISPECIALTY GROUP, INC. D/B/A ESSE HEALTH,**<br><br>      Defendant. | Case No. _____<br><br><br>**JURY TRIAL DEMANDED** |

### CLASS ACTION PETITION

Plaintiff Colleen Stuart ("Plaintiff"), individually and on behalf of all other similarly situated individuals (the "Class" or "Class Members," as defined below), by and through her undersigned counsel, files this Class Action Petition against American Multispecialty Group, Inc. d/b/a Esse Health ("Esse" or "Defendant") and alleges the following based on personal knowledge of facts, upon information and belief, and based on the investigation of her counsel as to all other matters.

### I.    NATURE OF THE ACTION

1.      Plaintiff brings this class action lawsuit against Esse for its negligent failure to protect and safeguard Plaintiff's and Class Members' highly sensitive personally identifiable information ("PII") and protected health information ("PHI") (together, "Private Information"), culminating in a massive and preventable data breach (the "Data

1

Electronically Filed - CITY OF ST LOUIS - May 19, 2025 - 04:21 PM

Breach" or "Breach"). As a result of Esse's negligence and deficient data security practices, cybercriminals easily infiltrated Esse's inadequately protected computer systems and accessed the Private Information of Plaintiff and Class Members.[1]

2.    Esse Health, an independent physician group healthcare provider with 50 locations in the greater St. Louis area in Missouri.[2]

3.    In or around May 2025, Esse announced that its network systems were offline due to a "cybersecurity event" (hereinafter referred to as the "Data Breach" or "Breach").[3]

4.    The Data Breach severely impacted Esse's systems, rendering parts of Esse's computer network inaccessible and putting healthcare on hold for many patients.[4]

5.    Esse's admission that it was locked out of its systems after the Breach is indicative of a ransomware attack perpetrated by cybercriminals. Ransomware is a type of malicious software—or malware—that prevents individuals from accessing computer files, systems, or networks and demands that the individual pay a ransom for their return.[5] Ransomware attacks can cause costly disruptions to operations and the loss of critical information and data.[6]

---

[1] *See* https://www.hipaajournal.com/esse-health-cyberattack/.
[2] *Id.*
[3] https://www.essehealth.com/network-updates/
[4] https://www.firstalert4.com/2025/05/07/cyberattack-puts-healthcare-hold-hundreds-st-louis-metro/.
[5] https://www.fbi.gov/how-we-can-help-you/scams-and-safety/common-frauds-and-scams/ransomware.
[6] *Id.*

Electronically Filed - CITY OF ST LOUIS - May 19, 2025 - 04:21 PM

6.      The healthcare industry is a prime target for ransomware attacks such as this because these organizations store vast amounts of sensitive data, including medical records, financial information and personal identification details.[7] This data is incredibly valuable on the black market, where it can be sold for purposes such as identity theft and insurance fraud.[8] The high demand for this data makes healthcare a lucrative target for cybercriminals.[9]

7.      Esse has yet to announce when the Data Breach began, when the Data Breach ended, the specific types of personally identifiable information ("PII") and protected health information ("PHI") impacted, and the number of individuals impacted by the Breach.

8.      However, upon information and belief, this Data Breach impacted all current and former patients of Esse.

9.      Upon information and belief, highly sensitive PII and PHI was accessed and acquired by cybercriminals during the Breach because that is the *modus operandi* of cybercriminals who perpetrate ransomware attacks against healthcare entities such as Esse.

10.     Upon information and belief, the types of PII/PHI accessed and stolen in the Data Breach included: names, dates of birth, contact information, Social Security numbers, driver's license numbers, government-issued ID numbers (e.g., passports and state ID

---

[7] https://www.raventek.com/safeguarding-patient-data-why-healthcare-is-a-prime-target-for-cybercrime/#:~:text=help%20mitigate%20risks.-,High%20Value%20of%20Patient%20Data,identity%20theft%20and%20insurance%20fraud.
[8] *Id.*
[9] *Id.*

Electronically Filed - CITY OF ST LOUIS - May 19, 2025 - 04:21 PM

cards), financial information (e.g., account numbers and credit or debit card numbers), medical information, and health insurance information (collectively, "Private Information").

11.    To date, there is no indication that Esse has made any attempt to recover Plaintiff's and Class Members' Private Information.

12.    Rather, Esse stated on May 13, 2025, "[w]e continue to work diligently to restore systems, and we are making good progress. We have now restored key information-sharing functions across our network, which will make it easier to fulfill new or previously scheduled appointments or procedures."[10]

13.    There is no question Plaintiff's and Class Members' Private Information is in the hands of cybercriminals who will continue to use the stolen Private Information for nefarious purposes for the rest of their lives.

14.    Upon information and belief, due to Esse's negligent failure to secure and protect Plaintiff's and Class Members' Private Information, cybercriminals have stolen and obtained everything they need to commit identity theft and wreak havoc on the financial and personal lives of thousands of individuals.

15.    Now, and for the rest of their lives, Plaintiff and the Class Members will have to deal with the danger of identity thieves possessing and misusing their Private Information. Even those Class Members who have yet to experience identity theft will have

---

[10] https://www.essehealth.com/network-updates/.

Electronically Filed - CITY OF ST LOUIS - May 19, 2025 - 04:21 PM

to spend time responding to the Data Breach and are at an immediate and heightened risk of all manners of identity theft as a direct and proximate result of the Data Breach.

16.     Plaintiff and Class Members have incurred and will continue to incur damages in the form of, among other things, identity theft, attempted identity theft, lost time and expenses mitigating harms, increased risk of harm, damaged credit, diminution of the value of their Private Information, loss of privacy, and additional damages as described below.

17.     Plaintiff brings this action individually and on behalf of the Class, seeking compensatory damages, punitive damages, nominal damages, restitution, injunctive and declaratory relief, reasonable attorneys' fees and costs, and all other remedies this Court deems just and proper.

## II.    **THE PARTIES**

18.     Plaintiff **Colleen Stuart** is an individual domiciled in Washington, Missouri. Plaintiff is a former employee and patient of Esse. Plaintiff provided her Private Information to Defendant to receive employment and/or healthcare related services. Upon information and belief, Plaintiff's Private Information was stored on Defendant's systems at the time of the Data Breach. Upon information and belief, Plaintiff is a victim of the Data Breach whose Private Information was accessed and acquired by cybercriminals in the Data Breach.

19.     Defendant **American Multispecialty Group, Inc. d/b/a Esse Health** is a Missouri corporation with its principal place of business located at 12655 Olive Blvd.,

Electronically Filed - CITY OF ST LOUIS - May 19, 2025 - 04:21 PM

Floor 4, Saint Louis, Missouri. Defendant's registered agent is David Kearney, who can be served at the same address.

### III.    JURISDICTION AND VENUE

20.    This is a civil case in which this Court has original jurisdiction pursuant to Mo. Const., Art. V. § 14.

21.    The amount in controversy exceeds $25,000.00.

22.    This Court has personal jurisdiction over Defendant because Defendant conducts a substantial amount of business in St. Louis, Missouri, is registered to do business in Missouri, and maintains its principal places of business in St. Louis, Missouri.

23.    Venue is likewise proper as to Defendant in this Court. As stated above, Defendant's principal place of business is in St. Louis, Missouri and many of Defendant's acts complained of herein occurred within St. Louis, Missouri.

### IV.    FACTUAL ALLEGATIONS

**A.    Esse Collected Plaintiff's and Class Members' Private Information.**

24.    Formed in 1996, Esse provides various medical services to adults and children in the St. Louis metropolitan area.[11]

25.    Esse has over 170 providers and 45 offices in and around the St. Louis Metropolitan area.

26.    It is estimated that Esse generates over $182.9 million in revenue every

---

[11] https://www.essehealth.com/about-us/our-story/.

Electronically Filed - CITY OF ST LOUIS - May 19, 2025 - 04:21 PM

year.[12] This makes it apparent Esse could have afforded to implement adequate data security prior to the Data Breach but deliberately chose not to.

27.    In the ordinary course of its business, Esse receives and stores the Private Information of thousands of individuals, including Plaintiff and Class Members.

28.    Upon information and belief, Plaintiff and Class Members are current and former employees and patients of Defendant.

29.    Esse solicits, collects, uses, and derives a benefit from Plaintiff's and Class Members' Private Information.

30.    Esse uses the Private Information it solicits, collects, and stores to provide healthcare services to its clients and/or employment, making a profit therefrom.

31.    Esse would be unable to engage in its regular business activities without collecting and aggregating Private Information it knows and understands to be sensitive and confidential.

32.    Upon information and belief, Class Members are current and former patients and employees of Esse. Upon information and belief, Esse promised data security as part of the services it provided. Part of the payment Esse received for performing these services should have been specifically allocated to data security.

33.    Esse agreed to provide adequate data security beyond the baseline protections of HIPAA and the FTC Act.

---

[12] https://growjo.com/company/Esse_Health#google_vignette.

Electronically Filed - CITY OF ST LOUIS - May 19, 2025 - 04:21 PM

34.     By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, Esse assumed legal and equitable duties and knew or should have known it was responsible for protecting Plaintiff's and Class Members' Private Information from unauthorized disclosure.

35.     Esse recognized its duty to protect and safeguard Plaintiff's and Class Members' Private Information and makes the following claim on its website, "[p]lease know that the confidentiality, privacy and security of information in our care is of utmost importance."[13]

36.     Contrary to its representations, however, Esse failed to implement adequate data security measures to protect Plaintiff's and Class Members' Private Information, resulting in a devastating data breach.

**B.     Esse's Massive and Preventable Data Breach.**

37.     Esse has provided limited information about the Data Breach to date, but has made the following announcements on its website (the "Website Notice"):[14]


[IMAGE ON FOLLOWING PAGE]


---

[13] https://www.essehealth.com/network-updates/.
[14] https://www.essehealth.com/network-updates/.

Electronically Filed - CITY OF ST LOUIS - May 19, 2025 - 04:21 PM

**5-13-25 Update**

We continue to work diligently to restore systems, and we are making good progress. We have now restored key information-sharing functions across our network, which will make it easier to fulfill new or previously scheduled appointments or procedures.

Additionally, due to certain systems coming back online, we can schedule appointments further out than before. With that said, if you need to reach us or need to schedule an appointment, the best way to contact us is still by:

1. Sending a text message to the main phone number for your doctor's office.
2. Sending a message via our patient portal.
3. Calling your doctor's office directly.

Please note that our phones' capabilities remain limited. We ask for extra patience if there are delays in calls connecting, though we hope to be able to share an update on our phone capabilities next week.

Again, we greatly appreciate your patience and support as we continue working to resolve this matter.

We remain committed to transparency through this process and will continue to share updates to this webpage as they are available.

Should you have any questions after reviewing this information, feel free to send them to inquiries@essehealth.com.

**To Our Valued Patients:**

We are writing today to advise you that some Esse Health network systems are currently offline due to a cybersecurity event. **Our offices remain open and we continue to serve patients.**

We are making progress in restoring systems, though it is possible that you may encounter some delays as we use back-up processes. For the time being, if you need to reach us or need to schedule an appointment, you can contact us by:

1. Sending a text message to the main phone number for your doctor's office. This is the most efficient and effective way to reach us.

2. Sending a message via our patient portal.

3. Calling your doctor's office directly. Please note that our phones' capabilities are currently limited, so we ask for extra patience if there are delays in calls connecting.

If you attempted to contact us in recent days but have yet to hear back, please contact us again using one of these methods.

We apologize for the inconvenience and concern created by this situation. We are working with third-party specialists to securely restore all systems and investigate this situation. Please know that the confidentiality, privacy and security of information in our care is of utmost importance. If our investigation determines that the confidentiality of data related to any individuals was compromised, we will notify them directly.

We greatly appreciate your patience and support as we work to resolve this matter. In the meantime, we are fully committed to continuing to provide you with the excellent care that you expect and deserve.

When there is new information to share, we will post updates to this web page. Should you have any questions after reviewing this information, feel free to send them to inquiries@essehealth.com.

38.     Omitted from the Website Notice were: (i) the exact date Esse discovered the Data Breach; (ii) the date(s) of Esse's investigation, an explanation as to why Esse failed to discover the Data Breach sooner; (iii) the details of the root cause of the Data Breach;

Electronically Filed - CITY OF ST LOUIS - May 19, 2025 - 04:21 PM

(iv) the vulnerabilities exploited; and (v) the remedial measures, if any, undertaken to ensure such a breach does not occur again. To date, these critical facts still have not been provided to Plaintiff and Class Members, who retain a vested interest in ensuring that their Private Information is protected.

39.     Upon information and belief, Esse knows its current and former patients' and employees' Private Information was compromised in the Data Breach but has yet to individually notify the victims.

40.     The Website Notice provided by Esse amounts to no real disclosure at all, as it fails to inform Class Members with any degree of specificity of critical facts concerning the Data Breach. Without these details, Plaintiff's, and Class Members' ability to mitigate the harms resulting from the Data Breach is severely diminished.

41.     Esse failed to take the necessary precautions required to safeguard and protect Plaintiff's and Class Members' Private Information from unauthorized access and exploitation.

42.     Esse also failed to timely notify Plaintiff and Class Members of the Data Breach.

43.     Esse's actions represent a flagrant disregard of the rights of Plaintiff and the Class, both as to privacy and property.

44.     As such, Plaintiff and the Class continue to be at an imminent and impending risk of identity theft and fraud.

**C.     Cyber Criminals Will Use Plaintiff's and Class Members' Private Information to Defraud them.**

45.     Private Information is of great value to hackers and cybercriminals, and the data compromised in the Data Breach can and will be used in a variety of ways by criminals to exploit Plaintiff and Class Members and to profit off their misfortune.

46.     Each year, identity theft causes tens of billions of dollars of losses to victims in the United States.[15]

47.     For example, with the Private Information stolen in the Data Breach, including Social Security numbers, identity thieves can open financial accounts, apply for credit, obtain medical services, file fraudulent tax returns, commit crimes, create false driver's licenses and other forms of identification and sell them to other criminals or undocumented immigrants, steal government benefits, give breach victims' names to police during arrests, and many other harmful forms of identity theft.[16]

48.     These criminal activities have and will result in devastating financial and personal losses to Plaintiff and Class Members.

49.      Medical-related identity theft is one of the most common, most expensive, and most difficult to prevent forms of identity theft. According to Kaiser Health News, "medical-related identity theft accounted for 43 percent of all identity thefts reported in the

---

[15] *Facts + Statistics: Identity Theft and Cybercrime*, INSURANCE INFO. INST., https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (last visited April 11, 2024).

[16] *See, e.g.*, Nikkita Walker, *What Can You Do With Your Social Security Number*, CREDIT.COM (Oct. 19, 2023), https://blog.credit.com/2017/11/5-things-an-identity-thief-can-do-with-your-social-security-number-108597/.

Electronically Filed - CITY OF ST LOUIS - May 19, 2025 - 04:21 PM

United States in 2013[,]" which is more than identity thefts involving banking and finance, the government and the military, or education.[17]

50.    "Medical records are a gold mine for criminals—they can access a patient's name, DOB, Social Security and insurance numbers, and even financial information all in one place."[18] A complete identity theft kit that includes health insurance credentials may be worth up to $1,000 on the black market.[19]

51.    When cybercriminals manage to steal health insurance information and other personally sensitive data—as alleged here—there is no limit to the amount of fraud to which Plaintiff and Class Members are exposed.

52.    Social Security numbers are particularly sensitive pieces of personal information. As the Consumer Federation of America explains:

> **Social Security number.** *This is the most dangerous type of personal information in the hands of identity thieves* because it can open the gate to serious fraud, from obtaining credit in your name to impersonating you to get medical services, government benefits, your tax refunds, employment – even using your identity in bankruptcy and other legal matters. It's

---

[17] Michael Ollove, *The Rise of Medical Identity Theft in Healthcare*, KAISER HEALTH NEWS (Feb. 7, 2014), https://khn.org/news/rise-of-indentity-theft/.

[18] *You Got It, They Want It: Criminals Targeting Your Private Healthcare Data, New Ponemon Study Shows*, IDX (May 14, 2015) https://www.idx.us/knowledge-center/you-got-it-they-want-it-criminals-are-targeting-your-private-healthcare-dat..

[19] *Managing cyber risks in an interconnected world: Key findings from The Global State of Information Security Survey 2015*, PRICEWATERHOUSECOOPERS (Sept. 30, 2014), https://www.pwc.com/gx/en/consulting-services/information-security-survey/assets/the-global-state-of-information-security-survey-2015.pdf.

Electronically Filed - CITY OF ST LOUIS - May 19, 2025 - 04:21 PM

Electronically Filed - CITY OF ST LOUIS - May 19, 2025 - 04:21 PM

hard to change your Social Security number and it's not a good idea because it is connected to your life in so many ways.[20]

(Emphasis added).

53.    Private Information is such a valuable commodity to identity thieves that once it has been compromised, criminals will use it for years.[21]

54.    The Data Breach at issue here was targeted and financially motivated, as the only reason cybercriminals go through the trouble of hacking healthcare entities like Esse is to steal the highly sensitive information they maintain, which can be exploited and sold for use in the kinds of criminal activity described herein.

55.    A Social Security number, date of birth, and full name can sell for $60 to $80 on the digital black market.[22]

56.    PHI is even more valuable on the black market than PII.[23]

57.    According to the Center for Internet Security, "[t]he average cost of a data breach incurred by a non-healthcare related agency, per stolen record, is $158. For healthcare agencies the cost is an average of $355. Credit card information and PII sell for

---

[20] *Dark Web Monitoring: What You Should Know*, CONSUMER FEDERATION OF AMERICA (Mar. 19, 2019), https://consumerfed.org/consumer_info/dark-web-monitoring-what-you-should-know/.

[21] *Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO (July 5, 2007), https://www.gao.gov/products/gao-07-737.

[22] Michael Kan, *Here's How Much Your Identity Goes for on the Dark Web*, PGMAG (Nov. 15, 2017), https://www.pcmag.com/news/heres-how-much-your-identity-goes-for-on-the-dark-web.

[23] *Data Breaches: In the Healthcare Sector*, CENTER FOR INTERNET SECURITY, https://www.cisecurity.org/insights/blog/data-breaches-in-the-healthcare-sector (last visited April 11, 2024).

$1-$2 on the black market, but PHI can sell for as much as $363 according to the Infosec Institute. This is because one's personal health history, including ailments, illnesses, surgeries, etc., can't be changed, unlike credit card information or Social Security Numbers."[24]

58.    "PHI is valuable because criminals can use it to target victims with frauds and scams that take advantage of the victim's medical conditions or victim settlements. It can also be used to create fake insurance claims, allowing for the purchase and resale of medical equipment. Some criminals use PHI to illegally gain access to prescriptions for their own use or resale."[25]

59.    Identity theft experts advise victims of data breaches: "[I]f there is reason to believe that your personal information has been stolen, you should assume that it can end up for sale on the dark web."[26]

60.    These risks are both certainly impending and substantial. As the Federal Trade Commission ("FTC") has reported, if hackers get access to PII, **they will use it**.[27]

---

[24] *Id.*

[25] *Id.*

[26] *Dark Web Monitoring: What You Should Know*, CONSUMER FEDERATION OF AMERICA (Mar. 19, 2019), https://consumerfed.org/consumer_info/dark-web-monitoring-what-you-should-know/.

[27] Ari Lazarus, *How fast will identity thieves use stolen info?*, MILITARY CONSUMER (May 24, 2017), https://www.militaryconsumer.gov/blog/how-fast-will-identity-thieves-use-stolen-info.

61.    Hackers may not use the information right away, but this does not mean it will not be used. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information **may continue for years**. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[28]

62.    For instance, with a stolen Social Security number, which, upon information and belief, is part of the Private Information compromised in the Data Breach, criminals can open financial accounts, get medical care, file fraudulent tax returns, commit crimes, and steal benefits.[29]

63.    Identity theft victims must spend countless hours and large amounts of money repairing the impact to their credit as well as protecting themselves in the future.[30]

64.    Esse has yet to even offer identity monitoring services to Plaintiff and the Class. Even if it did provide limited coverage, it would be woefully inadequate and would not fully protect Plaintiff and the Class from the damages and harm caused by Esse's negligent failure to secure and protect their Private Information.

---

[28] *Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO (July 5, 2007), https://www.gao.gov/products/gao-07-737 (emphasis added).
[29] *See* Nikkita Walker, *What Can Someone Do with Your Social Security Number?*, CREDIT.COM (Oct. 19, 2023), https://blog.credit.com/2017/11/5-things-an-identity-thief-can-do-with-your-social-security-number-108597/.
[30] *Guide for Assisting Identity Theft Victims*, FEDERAL TRADE COMMISSION (Sept. 2013), https://www.global-screeningsolutions.com/Guide-for-Assisting-ID-Theft-Victims.pdf.

65.     The unfortunate truth is the full scope of the harm has yet to be realized. There may be a time lag between when harm occurs and when it is discovered, and also between when Private Information is stolen and when it is used.

66.     Plaintiff and Class Members will need to pay for their own identity theft protection and credit monitoring for the rest of their lives due to Esse's negligence.

67.     Furthermore, identity monitoring services only alert someone to the fact that they have already been the victim of identity theft—it does not prevent identity theft.[31]

68.     Nor can an identity monitoring service remove personal information from the dark web.[32]

69.     "The people who trade in stolen personal information [on the dark web] won't cooperate with an identity theft service or anyone else, so it's impossible to get the information removed, stop its sale, or prevent someone who buys it from using it."[33]

70.     As a direct and proximate result of the Data Breach, Plaintiff and the Class have been damaged and placed at an imminent and continuing increased risk of harm from fraud and identity theft. Plaintiff and the Class must now take the time and effort to mitigate the actual and potential impact of the Data Breach on their everyday lives, including placing "freezes" and "alerts" with credit reporting agencies, contacting their financial

---

[31] *See* Kayleigh Kulp, *Credit monitoring services may not be worth the cost*, CNBC (Nov. 30, 2017, 9:00 AM), https://www.cnbc.com/2017/11/29/credit-monitoring-services-may-not-be-worth-the-cost.html.
[32] *Dark Web Monitoring: What You Should Know*, CONSUMER FEDERATION OF AMERICA (Mar. 19, 2019), https://consumerfed.org/consumer_info/dark-web-monitoring-what-you-should-know/.
[33] *Id.*

Electronically Filed - CITY OF ST LOUIS - May 19, 2025 - 04:21 PM

institutions, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts, credit reports, and medical records for unauthorized activity for years to come.

71.    Even more serious is the identity restoration that Plaintiff and other Class Members must go through, which can require spending countless hours filing police reports, filling out IRS forms, completing Federal Trade Commission checklists and Department of Motor Vehicle driver's license replacement applications, and calling financial institutions to cancel fraudulent credit applications, to name just a few of the steps Plaintiff and the Class must take.

72.    Plaintiff and the Class have or will experience the following concrete and particularized harms for which they are entitled to compensation, including:

    a.  Actual identity theft;

    b.  Trespass, damage to, and theft of their personal property, including their Private Information;

    c.  Improper disclosure and theft of their Private Information;

    d.  The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their Private Information being placed in the hands of criminals;

    e.  Loss of privacy suffered as a result of the Data Breach, including the harm of knowing cybercriminals have their Private Information;

Electronically Filed - CITY OF ST LOUIS - May 19, 2025 - 04:21 PM

Electronically Filed - CITY OF ST LOUIS - May 19, 2025 - 04:21 PM

f. Ascertainable losses in the form of time taken to respond to identity theft, including lost opportunities and lost wages from uncompensated time off from work;

g. Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably expended to remedy or mitigate the effects of the Data Breach;

h. Ascertainable losses in the form of diminution of the value of Plaintiff's and Class Members' Private Information, for which there is a well-established and quantifiable national and international market;

i. The loss of use of and access to their credit, accounts, and/or funds;

j. Damage to their credit due to fraudulent use of their Private Information; and/or

k. Increased cost of borrowing, insurance, deposits, and the inability to secure more favorable interest rates because of a reduced credit score.

73. Moreover, Plaintiff and Class Members have an interest in ensuring that their Private Information, which remains in the possession of Defendant, is protected from further breaches through the implementation of industry standard security measures and safeguards. Defendant has shown itself wholly incapable of protecting Plaintiff's and Class Members' Private Information.

74. Plaintiff and Class Members also have an interest in ensuring that their Private Information is removed from all of Esse's servers, systems, and files.

Electronically Filed - CITY OF ST LOUIS - May 19, 2025 - 04:21 PM

75.    Given the kind of Private Information Esse made accessible to hackers, Plaintiff and the Class are certain to incur additional damages. Upon information and belief, because identity thieves have their Private Information, Plaintiff and Class Members will need to have identity theft monitoring protection for the rest of their lives. Some may even need to go through the long and arduous process of getting a new Social Security number, with all the loss of credit and employment difficulties that come with a new number.[34]

76.    None of this should have happened because the Data Breach was entirely preventable.

**D.    Esse was Aware of the Risk of Cyberattacks.**

77.    According to the Center for Internet Security, "the health industry experiences more data breaches than any other sector."[35] This is because "Personal Health Information (PHI) is more valuable on the black market than credit card credentials or regular Personally Identifiable Information (PII). Therefore, there is a higher incentive for cyber criminals to target medical databases. They can sell the PHI and/or use it for their own personal gain."[36]

78.    "In 2023, more than 540 organizations and 112 million individuals were implicated in healthcare data breaches reported to the HHS Office for Civil Rights (OCR),

---

[34] *What happens if I change my Social Security number?*, LEXINGTON LAW (Aug. 10, 2022), https://www.lexingtonlaw.com/blog/credit-101/will-a-new-social-security-number-affect-your-credit.html.
[35] *Data Breaches: In the Healthcare Sector*, CENTER FOR INTERNET SECURITY, https://www.cisecurity.org/insights/blog/data-breaches-in-the-healthcare-sector.
[36] *Id.*

Electronically Filed - CITY OF ST LOUIS - May 19, 2025 - 04:21 PM

compared to 590 organizations and 48.6 million impacted individuals in 2022."[37]

79.    "The number of cybersecurity attacks disrupting the healthcare sector has continued to be a growing concern. In the last three years, more than 90% of all healthcare organizations have reported at least one security breach which can manifest in denial of service, malicious code, ransomed data, and more."[38]

80.    "Healthcare organi[z]ations are rich targets for cybercriminals because they hold a large amount of sensitive patient data. This data can be used to commit identity theft or fraud or sold on the black market. Hackers can access this data in many ways, including phishing emails, malware, and unsecured networks."[39]

81.    It is no secret that "[h]ealthcare data breaches are reaching record highs. Indeed, healthcare now sees more cyberattacks than any other industry. Fully one-third of all cyberattacks are aimed at healthcare institutions. Why? Because healthcare is a valuable and vulnerable target. Hospitals and healthcare institutions are a prime target for cybercrime due to the vast amount of sensitive data they hold."[40]

82.    The healthcare industry is frequently recognized as one of the most

---

[37] *This Year's Largest Healthcare Data Breaches*, HEALTH IT SECURITY (Dec. 26, 2023), https://healthitsecurity.com/features/this-years-largest-healthcare-data-breaches.
[38] *6 Industries Most Vulnerable to Cyber Attacks*, WGU (Aug. 3, 2021), https://www.wgu.edu/blog/6-industries-most-vulnerable-cyber-attacks2108.html.
[39] Troy Beamer, *What Industries Are Most Vulnerable to Cyber Attacks In 2024?*, TECHNEWS (Feb. 27, 2024), https://www.techbusinessnews.com.au/what-industries-are-most-vulnerable-to-cyberattacks-in-2022/.
[40] *What Industries Are Most Vulnerable to Cyberattacks?*, PSM, https://www.psmpartners.com/blog/most-targeted-industries-for-cyber-attacks/

vulnerable industries for a cyberattack.[41]

83.     Esse should have been aware, and indeed was aware,[42] that it was at risk of a data breach that could expose the Private Information that it solicited, collected, stored, and maintained, especially given the rise of healthcare data breaches.

84.     Esse recognized it had a duty to use reasonable measures to protect the Private Information that it solicited, collected, and maintained but failed to do so.

85.     Esse was aware of the risks and harm that could result from inadequate data security.

### E.      Esse Could Have Prevented the Data Breach.

86.     Data breaches are preventable.[43] "In almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[44] "Organizations that collect, use, store,

---

[41] *See, e.g.*, *id.*; Liudmyla Pryimenko, *The 7 Industries Most Vulnerable to Cyberattacks*, EKRAN (Mar. 25, 2024), https://www.ekransystem.com/en/blog/5-industries-most-risk-of-data-breaches; Ani Petrosyan, *Distribution of cyberattacks across worldwide industries in 2023*, STATISTA (Mar. 22, 2024), https://www.statista.com/statistics/1315805/cyber-attacks-top-industries-worldwide/; *6 Industries Most Vulnerable to Cyber Attacks*, WGU (Aug. 3, 2021), https://www.wgu.edu/blog/6-industries-most-vulnerable-cyber-attacks2108.html.

[42] *See Notice of Privacy Practices*, ESSE, https://Esseok.com/notice-of-privacy-practices (last accessed April 11, 2024); *Notice of Data Privacy Incident*, ESSE, https://Esseok.com/landing/cyber-event (last updated Feb. 6, 2024).

[43] Lucy L. Thomson, *Despite the Alarming Trends, Data Breaches Are Preventable*, DATA BREACH AND ENCRYPTION HANDBOOK (Lucy Thompson, ed., 2012), available at https://lawcat.berkeley.edu/record/394088.

[44] *Id.* at 17.

Electronically Filed - CITY OF ST LOUIS - May 19, 2025 - 04:21 PM

and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised[.]"[45]

87.    Most reported data breaches "are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures. . . . Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a *data breach never occurs*."[46]

88.    Here, many failures laid the groundwork for the Data Breach.

89.    The FTC has published guidelines that establish reasonable data security practices for businesses.[47]

90.    The FTC guidelines emphasize the importance of having a data security plan, regularly assessing risks to computer systems, and implementing safeguards to control such risks.[48]

91.    The FTC guidelines establish that businesses should protect the confidential information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies for installing vendor-approved patches to correct security problems.[49]

---

[45] *Id.* at 28.

[46] *Id.*

[47] *Protecting Personal Information: A Guide for Business*, FTC (Oct. 2016), available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

[48] *Id.*

[49] *Id.*

Electronically Filed - CITY OF ST LOUIS - May 19, 2025 - 04:21 PM

92.    The FTC guidelines also recommend that businesses utilize an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating hacking attempts; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[50]

93.    According to information and belief, Esse failed to follow reasonable and necessary industry standards to prevent a data breach, including the FTC's guidelines.

94.    Based on allowing its security certificates to lapse and upon information and belief, Esse also failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework, NIST Special Publications 800-53, 53A, or 800-171; the Federal Risk and Authorization Management Program (FEDRAMP); or the Center for Internet Security's Critical Security Controls (CIS CSC), which are well respected authorities in cybersecurity readiness.

95.    As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."[51]

96.    To prevent and detect the attack here, Esse could and should have taken, as recommended by the Federal Bureau of Investigation, the following measures:

---

[50] *Id.*
[51] *See How to Protect Your Networks from RANSOMWARE*, at 3, available at https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view.

Electronically Filed - CITY OF ST LOUIS - May 19, 2025 - 04:21 PM

- Implemented an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

- Enabled strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

- Scanned all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

- Configured firewalls to block access to known malicious IP addresses.

- Patched operating systems, software, and firmware on devices. Consider using a centralized patch management system.

- Set anti-virus and anti-malware programs to conduct regular scans automatically.

- Managed the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

- Configured access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read

Electronically Filed - CITY OF ST LOUIS - May 19, 2025 - 04:21 PM

specific files, the user should not have write access to those files, directories, or shares.

- Disabled macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- Implemented Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

- Considered disabling Remote Desktop protocol (RDP) if it is not being used.

- Used application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Executed operating system environments or specific programs in a virtualized environment.

- Categorized data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[52]

---

[52] *Id.* at 3–4.

Electronically Filed - CITY OF ST LOUIS - May 19, 2025 - 04:21 PM

97.    According to information and belief, Esse failed to do any of the above.

98.    As recommended by the United States Cybersecurity & Infrastructure Security Agency, Esse could have and should have taken the following measures to prevent the Breach:

- **Updated and patched your computer**. Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware attacks.

- **Used caution with links and when entering website addresses**. Be careful when clicking directly on links in emails, even if the sender appears to be someone you know. Attempt to independently verify website addresses (e.g., contact your organization's helpdesk, search the internet for the sender organization's website or the topic mentioned in the email). Pay attention to the website addresses you click on, as well as those you enter yourself. Malicious website addresses often appear almost identical to legitimate sites, often using a slight variation in spelling or a different domain (e.g., .com instead of .net).

- **Opened email attachments with caution**. Be wary of opening email attachments, even from senders you think you know, particularly when attachments are compressed files or ZIP files.

- **Kept your personal information safe**. Check a website's security to ensure the information you submit is encrypted before you provide it.

- **Verified email senders**. If you are unsure whether or not an email is legitimate, try to verify the email's legitimacy by contacting the sender directly. Do not click on any links in the email. If possible, use a previous (legitimate) email to ensure the contact information you have for the sender is authentic before you contact them.

- **Inform yourself**. Keep yourself informed about recent cybersecurity threats and up to date on ransomware techniques. You can find information about known phishing attacks on the Anti-Phishing Working Group website. You may also want to sign up for CISA product notifications, which will alert you when a new Alert, Analysis Report, Bulletin, Current Activity, or Tip has been published.

- **Used and maintain preventative software programs**. Install antivirus software, firewalls, and email filters—and keep them updated—to reduce malicious network traffic.[53]

---

[53] *See Protecting Against Ransomware*, CYBERSECURITY & INFRASTRUCTURE SECURITY AGENCY (revised Sept. 2, 2021), https://www.cisa.gov/news-events/news/protecting-against-ransomware (internal citations omitted).

99.    In addition, to prevent and detect the Data Breach, Esse could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

- **Harden internet-facing assets**

  - Apply latest security updates

  - Use threat and vulnerability management

  - Perform regular audits

- **Thoroughly investigate and remediate alerts.**

  - Prioritize and treat commodity malware infections as potential full compromise of the system

- **Include IT professionals in security discussions.**

  - Ensure collaboration among security operations, security administrators, and information technology administrators to configure servers and other endpoints securely

- **Build and maintain credential hygiene**

  - Use multifactor authentication or network level authentication and enforce strong, randomized, just-in-time local administrator passwords

- **Apply principle of least-privilege**

  - Monitor for adversarial activities

  - Hunt for brute force attempts

- Monitor for cleanup of Event Logs

- Analyze logon events

- **Harden infrastructure**

   - Utilize Windows Defender Firewall

   - Enable tamper protection

   - Enable cloud-delivered protection

   - Turn on attack surface reduction rules and Antimalware Scan Interface for Office Visual Basic for Applications[54]

100.    Given that Esse was storing the Private Information of thousands of individuals, Esse could and should have implemented all of the above measures to prevent and detect cyberattacks.

101.    Specifically, among other failures, Esse had far too much confidential unencrypted information held on its systems. Such Private Information should have been segregated into an encrypted system.[55]

---

[54] *See Human-operated ransomware attacks: A preventable disaster*, MICROSOFT THREAT INTELLIGENCE (Mar 5, 2020), https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/.

[55] *See* Adnan Raja, *How to Safeguard Your Business Data With Encryption*, DATAINSIDER (Aug. 14, 2018), https://digitalguardian.com/blog/how-safeguard-your-business-data-encryption.

Electronically Filed - CITY OF ST LOUIS - May 19, 2025 - 04:21 PM

102.    Moreover, it is well-established industry standard practice for a business to dispose of confidential Private Information once it is no longer needed.[56]

103.    The FTC has repeatedly emphasized the importance of disposing of unnecessary Private Information: "Keep sensitive data in your system only as long as you have a business reason to have it. Once that business need is over, properly dispose of it. If it's not on your system, it can't be stolen by hackers."[57] Rather than following this basic standard of care, Esse kept millions of individuals' unencrypted Private Information on their inadequately secured systems indefinitely.

104.    In sum, the Data Breach could have been easily prevented through standard practices like the use of industry standard network segmentation and encryption of all Private Information—which Esse negligently failed to do.

105.    Further, the scope of the Data Breach could have been dramatically reduced had Esse utilized proper record retention and destruction practices—but Esse negligently did no such thing.

F.    **Esse had an Obligation to Protect Private Information Under the Law and the Applicable Standard of Care.**

106.    As an entity handling medical data and providing services to healthcare organizations, Esse is a covered entity or business associate under HIPAA (45 C.F.R. §

---

[56] *See Protecting Personal Information: A Guide for Business*, FEDERAL TRADE COMMISSION (Oct. 2016), https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business.
[57] *Id.* at 6.

160.103). As such, Esse is required to comply with the HIPAA Privacy Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and the HIPAA Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and C ("Security Standards for the Protection of Electronic Protected Health Information").

107.    HIPAA's Privacy Rule establishes national standards for protecting health information, including health information that is kept or transferred in electronic form.

108.    Esse is required to "comply with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

109.    "Electronic protected health information" is "individually identifiable health information . . . that is: (i) transmitted by electronic media; [or] (ii) maintained in electronic media[.]" 45 C.F.R. § 160.103.

110.    The HIPAA Security Rule, 45 C.F.R. Part 164, Subpart C, requires Esse to:

a.    Ensure the confidentiality, integrity, and availability of all electronic protected health information it or any business associate creates, receives, maintains, or transmits;

b.    Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

c.    Protect against any reasonably anticipated uses or disclosures of such information; and

       d.      Ensure compliance by its workforce.

111.    HIPAA also requires Esse to "review and modify the security measures implemented . . . as needed to continue provision of reasonable and appropriate protection of electronic protected health information[.]" 45 C.F.R. § 164.306(e).

112.    Additionally, HIPAA requires Esse to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights[.]" 45 C.F.R. § 164.312(a)(1).

113.    The HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414, further requires Esse to provide notice of the Data Breach to each affected individual "without unreasonable delay and in no case later than 60 days following discovery of [the] breach[.]"

114.    Esse was also prohibited by the Federal Trade Commission Act, 15 U.S.C. § 45 (the "FTC Act"), from engaging in "unfair or deceptive acts or practices in or affecting commerce[.]" The FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g.*, *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

115.    Esse is further required by various states' laws and regulations to protect Plaintiff's and Class Members' Private Information.

116.    Esse owed a duty to Plaintiff and the Class to design, maintain, and test its computer and email systems to ensure that the Private Information in its possession and control was adequately secured and protected.

117.    Esse owed a duty to Plaintiff and the Class to create and implement reasonable data security practices and procedures to protect the Private Information in its possession, including adequately training its employees (and any others who accessed Private Information within its computer systems) on how to adequately protect Private Information.

118.    Esse owed a duty to Plaintiff and the Class to implement processes that would detect a breach of its data security systems in a timely manner.

119.    Esse owed a duty to Plaintiff and the Class to act upon data security warnings and alerts in a timely fashion.

120.    Esse owed a duty to Plaintiff and the Class to adequately train and supervise its employees to identify and avoid any phishing emails that make it past its email filtering service.

121.    Esse owed a duty to Plaintiff and the Class to disclose if their computer systems and data security practices were inadequate to safeguard individuals' Private Information from theft because such an inadequacy would be a material fact in individuals' decisions to entrust Esse with their Private Information.

122.    Esse owed a duty to Plaintiff and the Class to disclose in a timely and accurate manner when data breaches occurred.

33

Electronically Filed - CITY OF ST LOUIS - May 19, 2025 - 04:21 PM

123.    Esse owed a duty of care to Plaintiff and the Class because they were foreseeable and probable victims of any inadequate data security practices.

**G.    Plaintiff's Individual Experience**

  **i.    *Plaintiff Colleen Stuart***

124.    Plaintiff Stuart entrusted her Private Information to Defendant in order to receive employment and healthcare services. Plaintiff Stuart had the reasonable expectation and mutual understanding that Esse would keep her Private Information secure from unauthorized access.

125.    By soliciting and accepting Plaintiff Stuart's Private Information, Esse agreed to safeguard and protect it from unauthorized access and delete it after a reasonable time.

126.    Esse was in possession of Plaintiff Stuart's Private Information before, during, and after the Data Breach.

127.    Upon information and belief, Plaintiff Stuart is a victim of the Data Breach whose Private Information was stolen therein.

128.    Following the Data Breach, Plaintiff Stuart made reasonable efforts to mitigate the impact of the Data Breach, including, but not limited to researching the Data Breach, reviewing and monitoring her accounts for fraudulent activity, and/or reviewing her credit reports. In total, Plaintiff Stuart estimates she has already spent hours responding to the Data Breach.

129.    Plaintiff Stuart will be forced to spend additional time reviewing her credit reports and monitoring her accounts for the rest of her life. This is time spent that has been

Electronically Filed - CITY OF ST LOUIS - May 19, 2025 - 04:21 PM

lost forever and cannot be recaptured.

130.    Plaintiff Stuart places significant value in the security of her Private Information and does not readily disclose it. Plaintiff Stuart has never knowingly transmitted unencrypted Private Information over the internet or any other unsecured source.

131.    As a direct and traceable result of the Data Breach, Plaintiff Stuart suffered actual injury and damages after, upon information and belief,  her Private Information was compromised and stolen in the Data Breach, including, but not limited to: (a) lost time and money related to monitoring her accounts and credit reports for fraudulent activity; (b) loss of privacy due to her Private Information being accessed and stolen by cybercriminals; (c) loss of the benefit of her bargain because Esse did not adequately protect her Private Information; (d) emotional distress because identity thieves now possess her first and last name paired with her Social Security number and other sensitive information; (e) imminent and impending injury arising from the increased risk of fraud and identity theft now that her Private Information has been stolen and published on the dark web; (f) diminution in the value of her Private Information, a form of intangible property that Esse obtained from Plaintiff Stuart and/or her medical providers; and (g) other economic and non-economic harm.

132.    Plaintiff Stuart has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for *years* to come. This risk is certainly real and impending, and is not speculative, given the highly sensitive nature

Electronically Filed - CITY OF ST LOUIS - May 19, 2025 - 04:21 PM

of the Private Information stolen in the Data Breach.

133.   Plaintiff Stuart has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains in the possession of Defendant, is protected, and safeguarded from future data breaches. Absent Court intervention, Plaintiff Stuart's Private Information will be wholly unprotected and at-risk of future data breaches.

## V.    CLASS ACTION ALLEGATIONS

134.    Plaintiff incorporates by reference all preceding factual paragraphs as if fully restated here.

135.   Plaintiff brings this action against Esse on behalf of herself and all other individuals similarly situated under Missouri Rule of Civil Procedure 52.08. Plaintiff asserts all claims on behalf of a nationwide class (the "Class") defined as follows:

> **All persons whose PII and/or PHI was compromised in the Esse Data Breach.**

136.   Excluded from the Class is Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and members of their immediate families and their judicial staff members.

137.   Plaintiff reserves the right to amend or modify the above Class definition or to propose subclasses in subsequent pleadings and motions for class certification.

Electronically Filed - CITY OF ST LOUIS - May 19, 2025 - 04:21 PM

138.    Plaintiff anticipates the issuance of notice setting forth the subject and nature of the instant action to the proposed Class. Upon information and belief, Defendant's own business records or electronic media can be utilized for the notice process.

139.    The proposed Class meets the requirements of Missouri Rule of Civil Procedure 52.08.

140.    **Numerosity:** The proposed Class is so numerous that joinder of all members is impracticable.

141.    **Typicality:** Plaintiff's claims are typical of the claims of the Class because Plaintiff's Private Information, like that of every other Class Member, was compromised in the Data Breach. Plaintiff and all members of the Class were injured by the same wrongful acts, practices, and omissions committed by Esse, as described herein. Plaintiff's claims therefore arise from the same practices or course of conduct that gives rise to the claims of all Class Members.

142.    **Adequacy:** Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the Class. Plaintiff has retained counsel competent and highly experienced in data breach class action litigation, and Plaintiff and Plaintiff's counsel intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and her counsel.

143.    **Superiority:** A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiff and the Class. The injury suffered by each individual Class Member is relatively small in comparison to the burden and expense of

Electronically Filed - CITY OF ST LOUIS - May 19, 2025 - 04:21 PM

individual prosecution of complex and expensive litigation. It would be very difficult if not impossible for individual members of the Class to effectively redress Esse's wrongdoing. Even if Class Members could afford such individual litigation, the court system could not. Individualized litigation presents potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

144.    **Commonality and Predominance:** Defendant engaged in a common course of conduct toward Plaintiff and Class Members, in that Plaintiff's and Class Members' Private Information was stored on the same network and unlawfully accessed in the same way. There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include:

    a.  Whether Defendant engaged in the wrongful conduct alleged herein;

    b.  Whether Defendant owed a duty to Plaintiff and Class Members to adequately protect their Private Information;

    c.  Whether Defendant breached its duty to Plaintiff and Class Members to adequately protect their Private Information;

Electronically Filed - CITY OF ST LOUIS - May 19, 2025 - 04:21 PM

d.  Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

e.  Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

f.  Whether Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

g.  Whether Defendant knew or should have known that its computer and network security systems, or the computer and network security systems of its vendors, were vulnerable to cyberattacks;

h.  Whether Defendant's conduct, including its failure to act, resulted in or was the proximate cause of the Data Breach;

i.  Whether Defendant was negligent in permitting unencrypted Private Information belonging to thousands of individuals to be stored within its network;

j.  Whether Defendant was negligent in failing to adhere to reasonable data retention policies;

k.  Whether Defendant breached implied contractual duties to Plaintiff and the Class to use reasonable care in protecting their Private Information;

l.  Whether Defendant was unjustly enriched by unlawfully retaining a benefit conferred upon it by Plaintiff and Class Members;

Electronically Filed - CITY OF ST LOUIS - May 19, 2025 - 04:21 PM

m.  Whether Defendant should have discovered the Data Breach sooner;

n.  Whether Defendant failed to adequately respond to the Data Breach, including failing to investigate it diligently and notify affected individuals in the most expedient time possible and without unreasonable delay, and whether this caused damages to Plaintiff and the Class;

o.  Whether Defendant continues to breach duties owed to Plaintiff and the Class;

p.  Whether Plaintiff and the Class suffered injuries as a proximate result of Defendant's negligent actions or failures to act;

q.  Whether Defendant was negligent in selecting, supervising, and/or monitoring vendors;

r.  Whether Plaintiff and the Class are entitled to recover damages, equitable relief, and other relief; and

s.  Whether Defendant's actions alleged herein constitute gross negligence, and whether Plaintiff and Class Members are entitled to punitive damages.

145.  Defendant has acted on grounds that apply generally to the Class as a whole, so that Class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class wide basis.

146.  Finally, all members of the proposed Class are readily ascertainable. Defendant has access to Class Members' names and addresses. Class Members have already been preliminarily identified and sent notice of the Data Breach by Defendant.

Electronically Filed - CITY OF ST LOUIS - May 19, 2025 - 04:21 PM

## VI.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### NEGLIGENCE
### (On Behalf of Plaintiff and the Class)

147.    Plaintiff re-alleges and incorporates by reference all preceding factual paragraphs as though fully set forth herein.

148.    Esse solicited, collected, stored, and maintained the Private Information of Plaintiff and Class Members on inadequately secured computer systems and networks.

149.    Upon accepting and storing Plaintiff's and Class Members' Private Information on its computer systems and networks, Defendant undertook and owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting their Private Information from unauthorized access and disclosure.

150.    Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its computer systems and networks, and the personnel responsible for them, adequately protected the Private Information.

151.    Defendant's duty included a responsibility to implement processes by which it could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

152.    Defendant had full knowledge of the sensitivity of the Private Information in its possession and the types of harm that Plaintiff and Class Members could and would

Electronically Filed - CITY OF ST LOUIS - May 19, 2025 - 04:21 PM

suffer if the Private Information was wrongfully accessed or disclosed. Plaintiff and Class Members were therefore the foreseeable victims of any inadequate data security practices.

153.    Defendant's duty to implement and maintain reasonable data security practices arose as a result of the special relationship that exists between Defendant and consumers, which is recognized by laws and regulations, including, but not limited to, HIPAA, the FTC Act, and common law.

154.    Defendant was in a superior position to ensure its data security practices were sufficient to protect against the foreseeable risk of harm to Plaintiff and Class Members from a data breach.

155.    Defendant knew Plaintiff and Class Members relied on it to protect their Private Information. Plaintiff and Class Members were not in a position to assess the data security practices used by Defendant. Because they had no means to identify Defendant's security deficiencies, Plaintiff and Class Members had no opportunity to safeguard their Private Information from cybercriminals. Defendant exercised control over the Private Information stored on its systems and networks; accordingly, Defendant was best positioned and most capable of preventing the harms caused by the Data Breach.

156.    Defendant was aware, or should have been aware, of the fact that cybercriminals routinely target entities in the healthcare industry through cyberattacks in an attempt to steal valuable Private Information. In other words, Defendant knew of a foreseeable risk to its data security systems but failed to implement reasonable security measures.

Electronically Filed - CITY OF ST LOUIS - May 19, 2025 - 04:21 PM

157.    Defendant owed Plaintiff and Class Members a common law duty to use reasonable care to avoid causing foreseeable risk of harm to Plaintiff and the Class when obtaining, storing, using, and managing their Private Information, including taking action to reasonably safeguard or delete such data and providing notification to Plaintiff and Class Members of any breach in a timely manner so that appropriate action could be taken to minimize losses.

158.    Defendant's duty extended to protecting Plaintiff and the Class from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to such risk, or defeats protections put in place to guard against that risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B.

159.    Defendant had a duty to protect and safeguard the Private Information of Plaintiff and the Class from unauthorized access and disclosure. Additionally, Defendant owed Plaintiff and the Class a duty:

a.    to exercise reasonable care in designing, implementing, maintaining, monitoring, and testing its networks, systems, protocols, policies, procedures and practices to ensure that Plaintiff's and Class Members' Private Information was adequately secured from impermissible release, disclosure, and publication;

b.    to protect Plaintiff's and Class Members' Private Information by using reasonable and adequate data security practices and procedures;

Electronically Filed - CITY OF ST LOUIS - May 19, 2025 - 04:21 PM

c.      to implement processes to quickly detect a data breach, security incident, or intrusion involving its networks and servers; and

d.      to promptly notify Plaintiff and Class Members of any data breach, security incident, or intrusion that affected or may have affected their Private Information.

160.    Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect Plaintiff's and Class Members' Private Information.

161.    The specific negligent acts and omissions committed by Defendant include, but are not limited to:

a.      Failing to adopt, implement, and maintain adequate data security measures to safeguard Plaintiff's and Class Members' Private Information;

b.      Failing to adequately monitor the security of its networks and systems;

c.      Failing to ensure its email systems had plans in place to maintain reasonable data security safeguards;

d.      Failing to implement and maintain adequate mitigation policies and procedures;

e.      Allowing unauthorized access to Plaintiff's and Class Members' Private Information;

f.      Failing to detect in a timely manner that Plaintiff's and Class Members' Private Information had been compromised; and

Electronically Filed - CITY OF ST LOUIS - May 19, 2025 - 04:21 PM

     g.    Failing to timely notify Plaintiff and Class Members about the Data Breach so they could take appropriate steps to mitigate the potential for identity theft and other damages.

162.   Defendant's willful failure to abide by its duties to Plaintiff and Class Members was wrongful, reckless, and grossly negligent considering the foreseeable risks and known threats.

163.   It was foreseeable that Defendant's failure to use reasonable measures to protect Plaintiff's and Class Members' Private Information would result in injury to Plaintiff and Class Members.

164.   Furthermore, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches in the healthcare industry.

165.   As a direct and proximate result of Defendant's negligent conduct, including, but not limited to, its failure to implement and maintain reasonable data security practices and procedures as described above, Plaintiff and the Class have suffered damages and are at imminent risk of additional harms and damages (as alleged above).

166.   Through Defendant's acts and omissions described herein, including but not limited to Defendant's failure to protect the Private Information of Plaintiff and Class Members from being stolen and misused, Defendant unlawfully breached its duty to use reasonable care to adequately protect and secure the Private Information of Plaintiff and Class Members while it was within Defendant's possession and control.

Electronically Filed - CITY OF ST LOUIS - May 19, 2025 - 04:21 PM

167.    Further, through its failure to provide timely and clear notification of the Data Breach to Plaintiff and Class Members, Defendant prevented Plaintiff and Class Members from taking meaningful, proactive steps to secure their Private Information and mitigate the impact of the Data Breach.

168.    Plaintiff and Class Members could have taken actions earlier had they been timely notified of the Data Breach.

169.    Plaintiff and Class Members could have enrolled in credit monitoring, instituted credit freezes, and changed their passwords, among other things, had they been alerted to the Data Breach more quickly.

170.    Plaintiff and Class Members suffered harm from Defendant's delay in notifying them of the Data Breach.

171.    As a direct and proximate result of Defendant's conduct, including, but not limited to, Defendant's failure to implement and maintain reasonable data security practices and procedures, Plaintiff and Class Members have suffered or will suffer injury and damages, including, but not limited to: (i) the loss of the opportunity to determine for themselves how their Private Information is used; (ii) the publication and theft of their Private Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, fraud, and/or unauthorized use of their Private Information, including the need for substantial credit monitoring and identity protection services for an extended period of time; (iv) lost time and opportunity costs associated with efforts expended to address and mitigate the actual and future consequences of the Data

Electronically Filed - CITY OF ST LOUIS - May 19, 2025 - 04:21 PM

Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest and recover from fraud and identity theft; (v) costs associated with placing freezes on credit reports and password protections; (vi) anxiety, emotional distress, loss of privacy, and other economic and non-economic losses; (vii) the continued risk to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession; and (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the inevitable and continuing consequences of compromised Private Information for the rest of their lives. Thus, Plaintiff and the Class are entitled to damages in an amount to be proven at trial.

172.    The damages Plaintiff and the Class have suffered and will suffer (as alleged above) were and are the direct and proximate result of Defendant's negligent conduct.

173.    Plaintiff and the Class have suffered cognizable injuries and are entitled to actual and punitive damages in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**
**NEGLIGENCE *PER SE***
**(On Behalf of Plaintiff and the Class)**

174.    Plaintiff re-alleges and incorporates all preceding factual paragraphs as though fully set forth herein.

175.    Defendant had a duty to implement and maintain reasonable data security practices pursuant to Section 5 of the FTC Act, 15 U.S.C. § 45(a), which prohibits "unfair

Electronically Filed - CITY OF ST LOUIS - May 19, 2025 - 04:21 PM

. . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect sensitive and confidential data.

176.    The FTC Act prohibits "unfair practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect PII/PHI. The FTC publications and orders described above also formed part of the basis of Defendant's duty in this regard.

177.    Defendant solicited, collected, stored, and maintained Plaintiff's and Class Members' Private Information as part of its regular business, which affects commerce.

178.    Defendant violated the FTC Act by failing to use reasonable measures to protect Plaintiff's and Class Members' Private Information and by failing to comply with applicable industry standards, as described herein.

179.    Defendant breached its duties to Plaintiff and the Class under the FTC Act by failing to implement and maintain fair, reasonable, and adequate data security practices to safeguard Plaintiff's and Class Members' Private Information, and by failing to provide prompt notice of the Data Breach without unreasonable delay.

180.    Defendant's multiple failures to comply with applicable laws and regulations constitutes negligence *per se*.

181.    Plaintiff and the Class are within the class of persons that the FTC Act was intended to protect.

Electronically Filed - CITY OF ST LOUIS - May 19, 2025 - 04:21 PM

182.    The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, like Esse, that fail to employ reasonable data security measures and avoid unfair and deceptive practices, causing the same harm as that suffered by Plaintiff and the Class.

183.    Defendant breached its duties to Plaintiff and the Class by unreasonably delaying and failing to provide notice of the Data Breach expeditiously and/or as soon as practicable to Plaintiff and the Class.

184.    Defendant's violations of the FTC Act constitute negligence *per se*.

185.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and the Class have suffered, and continue to suffer, damages arising from the Data Breach, as alleged above.

186.    The injury and harm that Plaintiff and Class members suffered (as alleged above) was the direct and proximate result of Defendant's negligence *per se*.

187.    Defendant also had a duty to use reasonable security measures under HIPAA, which requires covered entities and business associates, like Esse, to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(1). Some or all of the medical information at issue in this action constitutes "protected health information" within the meaning of HIPAA.

188.   Title II of HIPAA contains what are known as the Administrative Simplification provisions. 42 U.S.C. §§ 1301, *et seq*. These provisions require, among other things, that the Department of Health and Human Services ("HHS") create rules to streamline the standards for handling Private Information. HHS subsequently promulgated multiple regulations under the authority of the Administrative Simplification provisions of HIPAA. These rules include 45 C.F.R. § 164.304, 45 C.F.R. § 164.306(a)(1-4), 45 C.F.R. § 164.312(a)(1), 45 C.F.R. § 164.308(a)(1)(i), 45 C.F.R. § 164.308(a)(1)(ii)(D), and 45 C.F.R. § 164.530(b).

189.   Defendant's violations of HIPAA constitute negligence *per se*.

190.   Plaintiff and the Class are within the class of persons HIPAA was intended to protect.

191.   The harm that occurred as a result of the Data Breach is the type of harm HIPAA was intended to guard against.

192.   Defendant's duty to use reasonable care in protecting Plaintiff's and Class Members' Private Information arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect and secure Private Information in its possession and control.

193.   As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) actual instances of identity theft or fraud; (ii) the compromise, publication, and/or theft of their Private Information; (iii) out-of-pocket expenses associated with the prevention, detection,

Electronically Filed - CITY OF ST LOUIS - May 19, 2025 - 04:21 PM

and recovery from identity theft, fraud, and/or unauthorized use of their Private Information; (iv) lost time and opportunity costs associated with efforts to mitigate the actual and future consequences of the Data Breach, including, but not limited to, time and resources spent researching how to prevent, detect, contest, and recover from fraud and identity theft; (v) costs associated with placing or removing freezes on credit reports; (vi) the continued risk to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the ongoing impact of the Data Breach for the remainder of the lives of Plaintiff and the Class.

194.    Additionally, as a direct and proximate result of Defendant's negligence *per se*, Plaintiff and the Class have suffered and will suffer imminent and impending injuries arising from the increased risk of future fraud and identity theft.

195.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and the Class are entitled to recover actual, consequential, and nominal damages.

196.    Plaintiff and the Class have suffered injury and are entitled to damages in amounts to be proven at trial.

**THIRD CAUSE OF ACTION**
**BREACH OF IMPLIED CONTRACT**
**<u>(On Behalf of Plaintiff and the Class)</u>**

197.    Plaintiff re-alleges and incorporates all preceding factual paragraphs as

though fully set forth herein.

198.    Upon information and belief, Defendant entered into contracts to provide employment and/or healthcare services.

199.    In exchange, Defendant agreed, in part, to implement adequate security measures to safeguard the Private Information of Plaintiffs and the Class and to timely and adequately notify them of the Data Breach.

200.    According to information and belief, these contracts were made expressly for the benefit of Plaintiffs and the Class, as Plaintiffs and Class Members were the intended third-party beneficiaries of the contracts entered into between Defendant and its clients. Defendant knew that, if it were to breach these contracts with its clients, Plaintiffs and Class Members would be harmed.

201.    Defendant breached the contracts entered into with its clients by, among other things, failing to (i) use reasonable data security measures, (ii) implement adequate protocols and employee training sufficient to protect Plaintiffs' and Class Members' Private Information from unauthorized disclosure to third parties, and (iii) promptly and adequately notify Plaintiffs and Class Members of the Data Breach.

202.    Plaintiffs and the Class were harmed by Defendant's breaches of contract, as such breach is alleged herein, and are entitled to the losses and damages they have sustained as a direct and proximate result thereof.

203.    Plaintiffs and Class Members are also entitled to their costs and attorney's fees incurred in this action.

Electronically Filed - CITY OF ST LOUIS - May 19, 2025 - 04:21 PM

Electronically Filed - CITY OF ST LOUIS - May 19, 2025 - 04:21 PM

**FOURTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class)**

204.    Plaintiff re-alleges and incorporates all preceding factual paragraphs as though fully set forth herein.

205.    Plaintiff alleges this claim in the alternative to her breach of contract claim.

206.    Plaintiff and the Class provided their Private Information to Esse to receive employment and/or healthcare related services.

207.    By conferring their Private Information, Plaintiff and Class Members reasonably understood Defendant would be responsible for securing their Private Information from unauthorized access and disclosure.

208.    Upon information and belief, Defendant funds its data security measures entirely from its general revenue, including from money it makes based on protecting Plaintiff's and Class Members' Private Information.

209.    Plaintiff and Class Members paid Defendant and/or their healthcare providers a certain sum of money, which was used to fund data security via contracts with Defendant.

210.    As such, a portion of the payments made by or on behalf of Plaintiff and the Class was to be used to provide a reasonable level of data security, and the amount of the portion of each payment made that is allocated to data security is known to Defendant.

211.    There is a direct nexus between money paid to Defendant and the requirement that Defendant keep Plaintiff's and Class Members' Private Information

Electronically Filed - CITY OF ST LOUIS - May 19, 2025 - 04:21 PM

confidential and protected from unauthorized access and disclosure.

212.    Protecting the Private Information of Plaintiff and Class Members is integral to Defendant's business. Without their Private Information, Defendant would be unable to provide services comprising Defendant's core business.

213.    Plaintiff's and Class Members' Private Information has monetary value.

214.    Plaintiff and Class Members directly and indirectly conferred a monetary benefit on Defendant. They indirectly conferred a monetary benefit on Defendant by purchasing goods and/or services from entities that contracted with Defendant, and from which Defendant received compensation to protect certain data. Plaintiff and Class Members directly conferred a monetary benefit on Defendant by supplying their Private Information, from which Defendant derives its business, and which should have been protected with adequate data security.

215.    Defendant solicited, collected, stored, and maintained Plaintiff's and Class Members' Private Information, and as such, Defendant had direct knowledge of the monetary benefits conferred upon it by Plaintiff and the Class. Defendant profited from these transactions and used Plaintiff's and Class Members' Private Information for business purposes.

216.    Defendant appreciated that a monetary benefit was being conferred upon it by Plaintiff and Class Members and accepted that monetary benefit.

217.    Under the facts and circumstances outlined above, however, it is inequitable for Defendant to retain that benefit without payment of the value thereof.

Electronically Filed - CITY OF ST LOUIS - May 19, 2025 - 04:21 PM

218.    Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Private Information.

219.    Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant instead calculated to increase its own profits at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's decision to prioritize its own profits over the requisite data security.

220.    Under the principles of equity and good conscience, Defendant should not be permitted to retain the monetary benefit belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures.

221.    Defendant acquired Plaintiff's and Class Members' Private Information through inequitable means in that it failed to disclose its inadequate data security practices, as previously alleged.

222.    If Plaintiff and Class Members knew that Defendant had not secured their Private Information, they would not have allowed Defendant to collect their Private Information.

223.    Plaintiff and Class Members have no adequate remedy at law.

224.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered or will suffer injury, including, but not limited to: (i) actual identity theft and fraud; (ii) loss of the opportunity to control how their Private Information is used;

Electronically Filed - CITY OF ST LOUIS - May 19, 2025 - 04:21 PM

(iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, fraud, and/or unauthorized use of their Private Information; (v) lost time and opportunity costs associated with efforts to mitigate the actual and future consequences of the Data Breach, including, but not limited to, effort and time spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information in their continued possession; and/or (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

225.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

226.    Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, all gains that they unjustly received.

**FIFTH CAUSE OF ACTION**
**DECLARATORY AND INJUNCTIVE RELIEF**
**(On Behalf of Plaintiff and the Class)**

227.    Plaintiff re-alleges and incorporates all preceding factual paragraphs as though fully set forth herein.

Electronically Filed - CITY OF ST LOUIS - May 19, 2025 - 04:21 PM

228.    As previously alleged, Defendant was required to provide adequate security for the protection of the Private Information Defendant collected.

229.    Defendant owed and still owes a duty of care to Plaintiff and Class Members that requires it to adequately secure Plaintiff's and Class Members' Private Information.

230.    Upon information and belief, Defendant still possesses Plaintiff's and Class Members' Private Information.

231.    Defendant has not satisfied its contractual obligations and legal duties to Plaintiff and Class Members.

232.    Since the Data Breach, Defendant has not announced any changes to its data security infrastructure, processes or procedures to fix the vulnerabilities in its computer systems and/or security practices which permitted the Data Breach to occur and go undetected and, thereby, prevent further attacks.

233.    Defendant has not satisfied its contractual obligations and legal duties to Plaintiff and the Class. In fact, now that Defendant's insufficient data security is known to hackers, the Private Information in Defendant's possession is even more vulnerable to cyberattacks.

234.    Further, Plaintiff and Class Members are at risk of additional or further harm due to the exposure of their Private Information and Defendant's failure to address the security failings that led to such exposure.

235.    There is no reason to believe that Defendant's security measures are any more adequate now than they were before the Data Breach.

236.    Plaintiff and the Class, therefore, seek a declaration (1) that Defendant's existing security measures do not comply with its contractual obligations and duties of care to provide adequate security, and (2) that to comply with its contractual obligations and duties of care, Defendant must implement and maintain reasonable security measures, including, but not limited to:

    a.    Ordering that Defendant engage third-party security auditors and penetration testers, as well as internal security personnel, to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

    b.    Ordering that Defendant engage third-party security auditors and internal personnel to run automated security monitoring;

    c.    Ordering that Defendant audit, test, and train its security personnel regarding any new or modified procedures;

    d.    Ordering that Defendant segment employee and patient data by, among other things, creating firewalls and access controls so that if one area of Defendant's systems is compromised, hackers cannot gain access to other portions of Defendant's systems;

    e.    Ordering that Defendant purge, delete, and destroy, in a reasonably secure manner, customer data not necessary for their provisions of services;

Electronically Filed - CITY OF ST LOUIS - May 19, 2025 - 04:21 PM

Electronically Filed - CITY OF ST LOUIS - May 19, 2025 - 04:21 PM

f.    Ordering that Defendant conduct regular database scanning and security checks; and

g.    Ordering that Defendant routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach.

## VII.   <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff and the Class pray for judgment against Defendant as follows:

a.    For an order certifying this action as a Class Action, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiff are proper representatives of the Class requested herein;

b.    For a judgment in favor of Plaintiff and the Class, awarding them appropriate monetary relief, including compensatory damages, punitive damages, nominal damages, attorneys' fees, expenses, costs, and such other and further relief as is just and proper;

c.    For an order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein;

d.    For an order requiring Defendant to pay the costs involved in notifying the Class about the judgment and administering the claims process;

Electronically Filed - CITY OF ST LOUIS - May 19, 2025 - 04:21 PM

e.    For a judgment in favor of Plaintiff and the Class, awarding them pre-judgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law; and

f.    For an award of such other and further relief as this Court may deem just and proper.

## VIII.  DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on any and all issues raised in this Class Action Petition so triable as of right.

Dated:  May 19, 2025

Respectfully submitted,

Maureen M. Brady   MO#57800
MCSHANE & BRADY, LLC
4006 Central Street
Kansas City, MO 64111
Phone:  (816) 888-8010
Fax:  (816) 332-6295
E-mail: mbrady@mcshanebradylaw.com


William B. Federman
Kennedy M. Brian
**FEDERMAN & SHERWOOD**
10205 North Pennsylvania Avenue
Oklahoma City, OK 73120
T: (405) 235-1560
E: wbf@federmanlaw.com
E: kpb@federmanlaw.com
PHV Forthcoming*
**ATTORNEYS FOR PLAINTIFFS**